UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:15CV460-PPS |
| | ) | |
| WHITNEY CHAPMAN and SHOWTIME | ) | |
| LOUNGE & GRILL LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION & ORDER

Joe Hand Promotions seeks a judgment by default against defendants Whitney Chapman and Showtime Lounge & Grill. [DE 13.] Joe Hand was the exclusive nationwide distributor of a pay-per-view broadcast of the "Ultimate Fighting Championship 168: Chris Weidman v. Anderson Silva," televised on Saturday, December 28, 2013. [DE 1 at ¶14.] Joe Hand filed a complaint with this court on December 23, 2015 alleging that the defendants pirated the telecast of the fight. [DE 1 at ¶9.] The defendants failed to serve an answer or otherwise defend this lawsuit, so Joe Hand moved for an entry of default [DE 8] and the Clerk entered default pursuant to Fed. R. Civ. P. 55(a) the next day. [DE 9]. Joe Hand has moved for default judgment and provided affidavits to support its claims for damages, costs, and attorney's fees. [DE 13, 14, 15.]

**Background**

According to the complaint, defendant Whitney Chapman is an officer and managing member of defendant Showtime Lounge & Grill LLC, which does business as Showtime Bar and Grill at 5126 Broadway, Gary Indiana. [DE 1 at ¶7, ¶10.] On December 28, 2013, Showtime Bar and Grill, under the supervision and management of Chapman and the LLC, broadcast "Ultimate Fighting Championship 168: Chris Weidman v. Anderson Silva." [*Id.* at ¶¶8–14.] Joe Hand had exclusive nationwide commercial distribution rights to the program, and spent money promoting and transmitting it to establishments in Indiana—establishments that paid Joe Hand for the right to publicly exhibit the program. [*Id.* at ¶¶14–16.] Showtime Bar and Grill did not pay for this right, showing the program for the purpose of commercial advantage and private financial gain with full knowledge that the program wasn't to be intercepted, received, published, divulged, displayed, or exhibited without Joe Hand's authorization. [*Id.* at ¶17–19.] Consequently, Joe Hand contends that the defendants are liable under the federal Communications Act of 1934 (47 U.S.C. §605), the Cable & Television Consumer Protection and Competition Act of 1992 (47 U.S.C. §553), and a state-law claim of conversion.

**Discussion**

Because a default has been entered against the defendants, I take Joe Hand's factual allegations relating to liability as true. *FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 (7th Cir. 1990) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319,

1323 (7th Cir. 1983)). If those factual allegations are sufficient to establish Joe Hand's claims, then I may enter default judgment against the defendants. *See Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994).

Turning to Counts I and II of the complaint under 47 U.S.C. §605(e)(3)(A) and 47 U.S.C. §553(c)(1), both federal statutes provide Joe Hand with a private right of action in a United States district court against the defendants for their interception of Joe Hand's program without authorization. Whether the defendants violated Section 605 or Section 553 depends on whether the defendants intercepted the program from a satellite or a cable transmission. *See* 47 U.S.C. §553(a)(1); 47 U.S.C. §605(b). There are sufficient factual allegations in Joe Hand's complaint, taken as true, to establish that the defendants willfully intercepted the program by showing it on December 28, 2013 without authorization [DE 1 at ¶¶17–18], but there is no way of knowing how the defendants intercepted the program.

Where a defendant's default prohibits discovery on whether the broadcast was intercepted over cable or satellite, courts allow recovery under Section 605. *See Joe Hand Promotions, Inc. v. L.A. Moon LLC*, 2013 WL 633572, at *1 (W.D. Wis. Feb. 20, 2013) (allowing recovery under Section 605 in the absence of evidence that defendant in default intercepted plaintiff's broadcast over satellite); *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999) ("[A] plaintiff is entitled to have damages awarded under 605 which provides greater recovery.") In the end, the defendants' failure to show up to court to defend the lawsuit, which has prevented

3

discovery on this issue, won't cause Joe Hand to suffer any prejudice. *See J & J Sports Prods., Inc. v. Estrada*, No. 14 C 2518, 2014 WL 2609751, at *2 (N.D. Ill. June 11, 2014). I will base the defendants' liability in default on Count I under Section 605, and dismiss Count II without prejudice.

Additionally, Chapman is only liable in an individual capacity if she "had a right and ability to supervise" the statutory violation and "had a direct financial interest" in such activities. *See J & J Sports Prods., Inc. v. Ziggy's Bar & Grill, Inc.*, No. 15-11585, 2015 WL 7567505, at *4 (E.D. Mich. Nov. 25, 2015); *J & J Sports Prods., Inc. v. Ribeiro*, 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008). Joe Hand alleges that Chapman is not only an officer of Showtime Lounge & Grill LLC, which owns or operates Showtime Bar and Grill, but is also a managing member of the LLC, and that Chapman supervised or authorized the unlawful broadcast of the program. [DE 1 at ¶¶7–12.] Taken as true, these allegations are enough to establish that Chapman had a right and ability to supervise the violation and had a direct financial interest in the action. Thus I find individual defendant Chapman liable jointly and severally with the LLC.

As for Count III, even if Joe Hand has sufficiently alleged conversion under Indiana law, any damages for conversion would be duplicative of those under Sections 605 or 553. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S.279, 297 (2002) ("[T]he courts can and should preclude double recovery." (quotation omitted)). Other courts confronting this exact situation have declined to award damages for conversion. *See J & J Sports Prods., Inc. v. McCausland*, No. 1:10-CV-01564-TWP, 2012 WL 113786, at *4 (S.D. Ind. Jan.

4

13, 2012); *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 491 (S.D.N.Y. 1999) ("[A]n award under [common law] claims would be duplicative of that under 47 U.S.C. § 605 [and] would violate the general principle that precludes double recovery." (quotation omitted)). In its complaint, Joe Hand requests compensatory, exemplary, and punitive damages for conversion in addition to costs and reasonable attorney's fees.[1] [DE 1 at 7.] As I'll discuss further below, an award of damages under Section 605 covers all these bases, so a finding of liability on Count III is unnecessary and Count III will be dismissed without prejudice.

**Damages**

While Joe Hand can plead in the alternative, it can't simultaneously pursue relief under Sections 605 and 553 in this circumstance. *See McCausland*, 2012 WL 113786, at *2. As I mentioned before, although the default makes it unknowable which federal statute prohibiting signal piracy was violated by the defendants, I will award Joe Hand reasonable damages under Section 605 (damages that in any event comport with both statutes). Section 605 permits a minimum of $1,000 to a maximum of $10,000 in statutory damages, within the court's discretion. 47 U.S.C. § 605(e)(3)(C)(i)(II). It also allows for enhanced damages for willful violations under Section 605(e)(3)(C)(ii) and for costs and reasonable attorney's fees under Section 605(e)(3)(B)(iii).

---

[1] Joe Hand has not requested any damages for conversion in its Proposed Default Judgment. [DE 13-2.]

5

In assessing statutory damages, courts in the Seventh Circuit diverge. Some courts calculate damages based on the plaintiff's "rate card," or what the plaintiff would have charged the defendant for authorized receipt of the program based on the establishment's occupancy capacity. *See, e.g., Estrada*, 2014 WL 2609751, at *3. Other courts award damages based on the number of patrons present during the violation multiplied by a set sum; this is typically done where the plaintiff doesn't provide a rate card. *See, e.g., That's Entertainment, Inc. v. Old Bridge Tavern*, No. 94 C 02612, 1996 WL 148045 (N.D. Ill. Mar. 28, 1996) (awarding $55 per patron, where plaintiff didn't provide a rate card); *see also J & J Sports Prods., Inc. v. Homestyle Restaurant Group, LLC*, No. 13-CV-506, 2014 WL 4072132, at *3–4 (E.D. Wis. Aug. 15, 2014) (considering, based on inflation, an award of $80 per patron).

Joe Hand has provided the court with the affidavit of the investigator, Ms. Gunn, who discovered the defendants' violation.[2] [DE 14-2.] Gunn says that she paid no cover charge to enter Showtime on the night of December 28, 2013. [*Id.* at 1.] She says that she observed the program being shown on five televisions, that the establishment could support approximately 150 patrons, and that there were 34, 40, and 43 people present at various times during the night. [*Id.*] Joe Hand also provided its rate chart, which lists a

---

[2]Joe Hand also provided the affidavit of another investigator, Mr. Rossetti [DE 14-3], but this appears to be in error. Rossetti says that he entered "Showtime Entertainment" at "270 Johnson St" in Gary, Indiana on the night of December 28, 2013. [*Id.* at 1.] There is nothing in the complaint that links Chapman or Showtime Lounge & Grill LLC to Showtime Entertainment or the 270 Johnson Street address. [*See* DE 1 at ¶7.]

price of $1,250 for establishments with a Fire Code Occupancy of 126 to 150 patrons. [DE 14-1 at 9.]

Joe Hand requests damages in the amount of $26,400, representing $4,400 in statutory damages multiplied by a factor of six to reflect enhanced damages available under Sections 605 and 553, in addition to $520 in costs and $1,925 in attorney's fees. [DE 13-2.] Joe Hand arrives at $4,400 by taking the 55 patrons present during the violation according to the Rosetti affidavit and multiplying by $80. [*Id.* at 1.] The multiplier of six, which Joe Hand uses to enhance the $4,400 in statutory damages to reach $26,400, comes from the rate chart in this way: Rosetti estimated a capacity of approximately 175 people at Showtime Lounge, and establishments with a capacity of between 151 and 175 people are the sixth category listed on the rate chart. [*Id.* at 2.]

I'm not persuaded to award $26,400 in damages. Joe Hand hasn't filed a memorandum in support of its motion for default judgment, so I don't have the benefit of a detailed explanation of the damages it proposes. But from what Joe Hand does provide, I can see a number of problems. To start, the per-patron method of calculating statutory damages is inappropriate because Joe Hand provided its rate chart, and, as I previously explained, courts typically award statutory damages equal to the applicable rate when the rate chart is available. Assuming for a moment that the per-patron method of calculation is appropriate, the number of patrons present and the estimated capacity Joe Hand relies on are taken from the Rosetti affidavit, which described a non-defendant venue and was mistakenly filed.

The relevant numbers are from the Gunn affidavit—up to 43 patrons present and a capacity of approximately 150. [DE 14-2 at 1.] According to Joe Hand's formula, this would put total damages at $17,200: $80 multiplied by 43 patrons, enhanced by a factor of five because a capacity of 126 to 150 people is the fifth category on the rate chart. [DE 14-1 at 9.] But there's another problem: the multiplier is arbitrary. Joe Hand can organize its rate chart so that establishments with a capacity of 126 to 150 people are the fifth category listed, or the tenth, or the fifteenth. Joe Hand hasn't provided a justification for its multiplier, so I won't go hunting for one.

Because Joe Hand has provided its rate chart for the program, I will award statutory damages in the amount of $1,250 based on the Showtime Lounge's reported capacity. Turning to consideration of enhanced damages, §605(e)(3)(C)(ii) allows me to increase the statutory damages "by an amount of not more than $100,000 for each violation" if I find that "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." Joe Hand provided an affidavit from its president indicating that Joe Hand's programming "cannot be mistakenly, innocently[,] or accidentally intercepted." [DE 14-1 at 3.] In addition, the Gunn affidavit establishes that at least 43 patrons were present during the violation [DE 14-2 at 1]. Based on this record, I find that the defendants willfully committed the violation for the purpose of direct commercial advantage or private financial gain and are subject to enhanced damages under §605(e)(3)(C)(ii).

Awarding statutory damages according to Joe Hand's rate chart without any enhancement would only compensate Joe Hand for its subscription loss, "not fully divest the defendants of any profits derived from unlawfully exhibiting the program." *Estrada*, 2014 WL 2609751, at *3. Courts consider a range of factors in setting enhanced damages, including: "(1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge on the night of the event." *McCausland*, 2012 WL 113786, at *4 (citing *Kingvision Pay-Per-View, Ltd. v. Rodriguez*, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003)). Courts also consider the proximity of the establishment to an urban area, the number of screens displaying the program, and "the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business." *Id.* (citation omitted).

While the defendants didn't charge a cover on the night of the event and there is no evidence they advertised for the event or committed multiple violations, they displayed the program on five screens and served at least 43 patrons. Showtime Bar and Grill is also located in Gary, Indiana, a city within the Chicago, Illinois metropolitan area. However, I am most concerned with the need to send a strong deterrent signal. By failing to appear and defend against the lawsuit, the defendants gave up the opportunity to explain how an award of enhanced damages might impair the viability of their business. Considering all of these factors, I will triple the statutory damages. *See*

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981) ("The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct."). Tripling $1,250 results in a total of $3,750 in enhanced statutory damages.

Joe Hand has also requested costs and reasonable attorney's fees, which it is entitled to under 47 U.S.C. § 605(e)(3)(B)(iii). Joe Hand has provided an affidavit from its attorney and supporting documentation that support costs of $520 and attorney's fees of $1,925. [DE 15; DE 15-1.] After reviewing these materials, I find the costs and fees reasonable and will add them to the damages of $3,750, resulting in a total award of $6,195.

**Conclusion**

For the foregoing reasons, Joe Hand's motion for entry of default judgment [DE 13] is **GRANTED**, and the Clerk is directed to enter default judgment in favor of plaintiff Joe Hand Promotions, Inc. and against defendants Whitney Chapman and Showtime Lounge & Grill LLC, jointly and severally on Count I of the complaint, in the total amount of $6,195, consisting of $3,750 in enhanced statutory damages plus attorney's fees of $1,925 and costs of $520. Counts II and III are dismissed without prejudice.

**SO ORDERED.**

ENTERED: July 18, 2016.

　　　　　　　　　　　　　　　　　/s/ Philip P. Simon　　　　　　
　　　　　　　　　　　　　　　　CHIEF JUDGE
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT